Good morning, Justices, Mr. Miskol, my name is Roger Siegel. On behalf of Mr. Renteria-Castillo, he's the Defendant Appellee in this matter. This case raises so many extraordinarily unusual factual circumstances that probably the most would be to make a holding which is narrowly limited to the facts of this case, as the Court is normally prone to do anyways, but the circumstances were so unusual. What was so unusual about the circumstances? Well, Judge, number one, the government had reason to doubt whether either of the defendants or other material witnesses had been deported, and obviously the deportation leading to the unavailability issue was critical. They knew that they had believed until the day of trial that the one material witness we'll refer to is Matwitz. They thought that she had been deported. The day before trial, they learned that, in fact, she had not been deported. Both Matwitz were deported pursuant to the same order by the judge released. You entered a stipulation that said that the witnesses were unavailable. And that the government relies very heavily on that stipulation, and this case is completely different from those cases where the stipulation was found important, particularly looking at the case that addressed the stipulations most specifically was Molina, and the government raises that. First, I would strongly tell Your Honors that the Court should not and cannot look to the stipulation because it was not argued or submitted below for the purpose of admitting the depositions. The government trying to get around that. Roberts, what makes it hard to say that your client was prejudiced if your client entered into a stipulation that assumed these people were not going to be available? I mean, I just have a hard time disregarding that. The stipulation, as the Court can see in Molina, there are two different stipulations, at least two different stipulations that are used in the district court in Arizona. Molina also came from the district of Arizona. In Molina — Why don't you focus on the question I posed? How is your client prejudiced if your client entered into a stipulation, had an opportunity to cross-examine, and assumed the person wasn't going to be available again? So what's the problem? Because the stipulation specifically did not agree to the admission of the deposition. All that the stipulation — What was the deposition for but to capture the testimony of somebody who wasn't going to be available at trial? That's the purpose of the deposition, but in case the person is not going to be available at trial, it does not relieve the government of its independent obligation to make reasonable efforts once — But it doesn't answer the question I posed, which is your client stipulated that he was going to be unavailable, ought to have known that you couldn't count on actually getting him present, and went ahead with the deposition. So how is your client prejudiced? He did not stipulate to waiving his confrontation rights. He did not stipulate — Still waiting for an answer to the prejudice question. If your client couldn't assume that the guy was going to be available, why wasn't that a full opportunity at examination? First, there's a lot of language, I believe it's in the Yeaded decision, which explains why a material deposition is much less than what is in the Yeeded decision, which is why, while it might be a substitute under the Sixth Amendment, there's a lot to be desired. It's all theory. I'm hearing nothing factual, nothing specific that suggests what prejudice was suffered by your client. Well, okay, factually, Judge, if the defendant had the opportunity to speak with, to cross-examine the other individual, Mr. Gutierrez, the defendant would have been able to bring out a number of specific factors which had been developed since the time that he had been deposed. The Ninth Circuit's decision is clear that a couple of the reasons for requiring the government to make reasonable efforts is that after a deposition is taken, there's a lot of independent investigation that goes on, and that investigation, specifically all of the inconsistent statements made by the other material witness, could have been used. Were both of these material witnesses deposed? Excuse me? Were both of the witnesses deposed? Both witnesses were deposed. Was the same stipulation executed with respect to both of them? The same stipulation was entered, which did not stipulate to admission of the deposition itself. It only stipulated with respect to the other witnesses. What else is the consequence of the stipulation you entered? Excuse me? What else is the consequence of the stipulation you entered? The consequences of the stipulation? Right. Oh, the, the, I believe that the Ninth Circuit law is clear that if you're going to waive the Sixth Amendment right to confront, it has to be, first the government has to prove it by clear and convincing evidence, and it's got to be expressed. And all that this stipulation dealt with was an evidentiary, was something to do with the fact that this stipulation was not the kind of stipulation that was entered in Molina where the judge said, hey, you can't enter into stipulation and then come back after you plead guilty, withdraw your plea, and then the witnesses are gone. What is our standard of review here? Let's assume the hypothetical, and I'm not saying that I agree with it, that the evidence against your client, if you sort of removed the deposition testimony, was nonetheless very strong. Is our standard of review harmless beyond a reasonable doubt? Are you saying that because you're raising a confrontation clause argument that it's a structural error that requires in and of itself reversal? Or is it different from cases like Melendez-Diaz where there was a confrontation clause issue because here your client was, in fact, cross-examined? Your Honor, what — And had the opportunity to cross-examine, I should say. First, with respect to standardized to harmlessness, the government has waived harmlessness because it has not raised it at all in its memorandum. Second, the one, the standard that should apply is constitutional, because is harmlessness beyond a reasonable doubt, as I've laid out in my memo. But the government didn't raise it, didn't raise any arguments to it. I haven't been able to respond to it. So harmlessness, and I think that was as an understanding, the government's understanding that the harmfulness was so strong that the government really had to rely on the merits of the arguments. I'd like to reserve my — Sorry. During your argument now, you've raised things that perhaps might have been developed with respect to your — by your client. Are those aspects, you know, further investigation, other issues at trial that — with respect to trial that might have been developed, does that appear anywhere in the record? Throughout the record, Judge. Throughout the record, and I very copiously list all the different ways that the material witness depositions versus the — between the two individuals were contradictory and inconsistent, and I raise all the different ways that the — that the — that their deposition testimony was different and contradicted their testimony with respect to the — their statements to the officers when they were first questioned. I would like to reserve as much time as I can without wanting — while I still want to answer your question for rebuttal. All right. Why don't you reserve the remainder of your time? Thank you. Hey. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. In this case, there was a stipulation entered that the material witness was unavailable. There is no indication in the record that stipulation was involuntary. Do you have — does your office use two different forms of stipulation? Yes. And is one intended to cover the confrontation clause issue and one isn't? I mean, why are they different? There are two different — the two different stipulations that are used is when we have a case that we proceed under what we call a fast-track approach, the material witness depositions actually aren't taken. And in that scenario, in exchange for getting a very favorable plea offer, we — the defendant signs a stipulation saying that the statements the material witness has would be admissible. That's the one stipulation we use. And the stipulation where the depositions — in a situation where the depositions are actually done — So when you don't have a deposition that you're taking, then you put in the Crawford waiver? We get a waiver, and they specifically agree that the statements the material witness made to the agent at the time of the arrest would be admissible at trial. Okay. In the cases where there is a deposition done, we do the stipulation that you've seen in this case, which is basically that the witness is unavailable. And since the witness — the stipulation was the witness was unavailable, the defense attorney clearly had the opportunity to cross-examine, so the requisites for admissibility are present. What is the evidence of record as to whether the government actually took good-faith, reasonable steps to ascertain the availability of the material witnesses? The record shows that the government wrote a letter to the witness in care of their appointed attorney, asking the appointed attorney to contact them and ask if they want to come to the trial at government expense. The attorney indicated that he was unable to contact the witness. That is a reasonable good-faith effort. And contrary to the situation in the Rodriguez case, in this case, in the Rodriguez case that the Court recently decided, the main key factor was the material witness attorney did not have an address for the witness, but the government did. In this case, the Court determined and stated that the material witness had some contact information for the witness. And that was at the hearing on February 2nd, I believe. No, excuse me, April 27th at page 35 and 36 of the transcript of the April 27th transcript. I'm sorry. So that's the end. I think the evidence, actually, the defendant brought up about the other material witness was located by the government shortly before trial, shows that the government's approach is effective in determining whether the material witness is available. I mean, we found the other witness, and she did appear personally at trial, so the deposition didn't have to be used. Now, here, wasn't there a change in trial dates? Yes. And isn't there an issue as to whether the change in trial dates was communicated to Gutierrez?  The correct trial date was listed in the letter. A few days later, the trial was continued. It was moved back two weeks. Since the material witness attorney stated that he didn't make contact, ultimately, with the witness, the fact that the trial date had been moved doesn't really change anything in that scenario, I don't believe. But in this case, and again, we did have the stipulation. There was no evidence that the stipulation was involuntary or unknowing, which is required before the defendant can get out of the stipulation. And I'm unclear about something in the record, and that's at pages 1158 to 1160. And in the record, there's a question, an issue, regarding whether a stipulation would be admitted into evidence. This was with respect to the motion in limine. Right. And the judge, well, first, Mr. Sigel, says there are questions of voluntariness. And the judge says, I agree with defense counsel that this stipulation is not a stipulation for purposes of trial. Now, that's a — are we talking about a different stipulation? No. That's the same stipulation in that the court was — contrary to the defendant's argument, this — it was litigated somewhat in the district court. And the defense counsel convinced the court that the stipulation had to be entered in open court. And that's actually not correct for a stipulation of this Court's case law. And the court found that the witness was — that the government had determined that the witness was unavailable. So — but, yeah, the court — that was the same stipulation, factually, yes. Right. So, in a sense, the argument would be made that this differs from a case like Molina, where there's no question of the voluntariness to the stipulation. Under the facts that this Court uses to determine whether a statement is — a stipulation is voluntary, this stipulation was voluntary. He was represented by an attorney. Both the dependent and the attorney signed the stipulation. Considering all of those factors, the stipulation was valid. It's hard to imagine a stipulation that would not be valid under those circumstances, actually. When he has a representative signing with — an attorney signing the stipulation with the defendant, and the stipulation clearly stipulated that the material witness was unavailable. Even if — looking at the Matus Zayas case, even if there is a stipulation as to the unavailability, is the government still required to demonstrate that it made reasonable efforts to locate the witness? With a stipulation, no. The stipulation satisfies the requirement of demonstrating unavailability. It's not contested. It's agreed to. Why do you argue — why are you arguing that you made reasonable efforts? I thought what you needed was a stipulation. Always argue both. I don't think that's right. I think that you still have an obligation. Well, and the obligation was certainly met here. I mean — I don't even know if the obligation was met here. It just doesn't seem to be a clear record on that. To give kind of by way of analogy, say the parties stipulate that certain records are admissible under the business records exception. The government does not then have to establish all the requirements of the business record exception to get those documents into evidence. The stipulation meets that requirement. And that's the same here. There's a stipulation that the witness was unavailable for — Business records doesn't involve the Constitution. I do not think those things are analogous. We're talking about fundamental constitutional rights. Well, I mean — Distinction, right? Well, in the business record exception example, the witness is giving up the opportunity to cross-examine the person who's going to introduce the business records. I mean — We're talking about civil litigation versus laws of liberty, so — You use business records in criminal cases, Judge. I mean — You do — It's completely a terrible analogy. But it's okay. How do you respond to your brother's argument that you've waived the harmless error analysis? I think with the stipulation and the efforts, the good, reasonable efforts the government made, you don't even need to get to the harmlessness analysis. But have you waived the harmlessness analysis? It was not raised in the brief. So you're saying it was waived? Unless the court — the court always can decide that on its own. But you waived — so you're conceding you waived the harmless — I'm conceding I did not raise it in the brief. What do we do with that? Well, then it's up to you to decide whether you want to address it or not. You have that discretion. What's your best case for that proposition? What's your home run case? Actually, the Rodriguez case. That's the one I cited in my 28-J letter. You don't have to, but you have the discretion to. All right. Unless the court has any further questions? Thank you, counsel. Thank you. What the prosecutor did in this case was the antithesis of reasonable efforts. What the prosecutor did was he asked — he said — he got a — made a phone call to the Matt Witt attorney who told him, basically, I've been unable to reach my client. No questions about, well, do you have an address? Well, did you talk to him? Did you talk to family members? Do you have an address? Can I get the address? They did nothing. All right. Say we accept all that. Basically, your opposing counsel has conceded all that. I think we do end up back at what is your best case if this was prejudicial to your client? The best case on the — What is the prejudice? What's the best case for prejudice that you have in this record? Based on this record, first, the defendant — it was clear in the record that the Matt Witt was, in fact, in the country. We don't know whether he was deported, and had he been available to testify, he would — I think the defense of the defense did, of course, do this very contradictory things about issues which very significantly — The client was convicted on the charge as to the other witness. Because they had the — they had the deposition of the other individual which, in a very general sense, corroborated her general story. But since that time, the defense developed all of these inconsistencies, none of which would have matched and would have given the defense the opportunity in order to develop the record with the material witness to show that the stories that were being given by the two material witnesses were completely different. There was absolutely — But the key issue in this case was whether or not your client knew that these were aliens and not U.S. citizens. Correct. Didn't the whole case turn on that point? And the record on that, I'm glad you raised that, because the record on that was so different with respect to the — with the two different individuals, with respect to the material witness who is at issue here, who was not — there were no reasonable efforts made to bring him in. What he said was that in his video deposition was all that — what the defendant — the defendant gave him one instruction, that they never informed him that he was an illegal alien and that the defendant said, say that you're U.S. citizens. That's it. During the other material witness's testimony, she developed — she added a whole slew of different things. He told us to say that if we were — that we were on our way to — to say that we were on our way to Tucson, yet he never translated it to them. They didn't speak any English. He said, I'll list the litany of — she says four different things about it. In addition, the most critical — one of the most critical facts is that at the time that the individual — that the material witness — both material witnesses were interrogated after their arrest, they both said in their video depositions that the — that the agents told them that they were unhappy with their answers. And after they told them that they were unhappy with their answers, and also the — Gutierrez, the material witness in question, said that he knew that if he told them what they wanted to hear, that he would be able to go. So he said that he was a citizen. But as to that point, the records — the records from the I-213s and other records that were filled out by Border Patrol had been changed to reflect — to reflect a difference that supported the ultimate story that came from the material witnesses who had been challenged, Mr. Gutierrez. Originally — and this was conceded by the government — the date of entry was 7-15 and the date of arrest was 7-30. It was clear that the date of arrest was 7 — or — was 7-30. Then it was changed — marked out and changed to 7-20. This was significant because the material witness, Maria, who actually testified in court, stuck to her guns throughout the entire interrogation, despite the fact that the agent told her he was unhappy with her statement. And the agent couldn't remember if he said that or not. And she stuck to her guns, saying they'd been there for 15 days, they'd crossed on their own, they'd rented an apartment for 15 days, and that 15 — and then they were brought to this individual who was my client, who was going to give them a ride to Tucson. And she said that we met him on the street, we asked him for — in front of a laundromat, we asked him for a ride, he agreed to give us to a ride in Tucson, and she said that there was no coaching or anything done during her interrogation. And she stuck to that story. All right. Thank you, counsel. You've gone well over your time. I appreciate — I appreciate your patience. Thank you. Thank you. U.S. v. Ventura Castillo will be submitted, and we'll take up U.S. v. Chan.
judges: Wardlaw, Clifton, Katzmann